STATE, EX REL. BLES, RELATOR, *v.* MERRICK, RESPONDENT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26706. Decided February 14, 1964.

*Messrs. Jones, Emmett & Weisberger*, for relator.
*Mr. Frank J. Merrick*, in p. p., for respondent.

ARTL, J.   This is an action in mandamus originating in this court.   Relator seeks a writ ordering respondent in his capacity as Clerk Ex Officio of the Probate Court of Cuyahoga County to accept for filing an affidavit to commence proceedings for hospitalization of an individual pursuant to Sections 5122.11 to 5122.15, Revised Code, and to order respondent in his judicial capacity to proceed to an adjudication, thereof, in accordance with the aforesaid sections of the Revised Code.

Apart from the formal allegations of relator's petition, which we find to be in conformity with the law, the gist of relator's complaint is, in substance, that on the 21st day of September, 1963, relator appeared in the Probate Court of Cuyahoga County, Ohio, and requested to file an affidavit and commence proceedings for the hospitalization of an individual, Thomas C. Bles, pursuant to Sections 5122.11 to 5122.15, et seq., Revised Code; that at the direction of and by the authorization of Frank J. Merrick, judge of the Probate Court, through his duly qualified and acting deputy, relator's request was refused; that he refused to provide the forms, therefor, as prescribed by the Division of Mental Hygiene under his control and keep;

that he refused to docket or number the proceeding; and that he refused to proceed to an adjudication as provided in Sections 5122.11 to 5122.15, et seq., Revised Code. Relator pleads further that she has no other adequate remedy at law or in equity to compel respondent to perform the duties of his office as prescribed by the Revised Code and that relator is entitled to a peremptory writ of mandamus to compel the performance by respondent of his duties as hereinabove set forth and that she is entitled to her costs and expenses incurred in this action. She prays for relief in accordance therewith.

Respondent's answer admits all facts pleaded in the petition herein and states that all acts attributed to him therein were authorized by statute permitting his discretion therein and prays that the petition be dismissed at costs of relator.

Relator's reply denies that respondent is vested with discretion by statute or otherwise to refuse to act as complained of by relator in her petition and states that any such discretion as claimed by respondent, if authorized by statute, would be in violation of the Constitution of the State of Ohio and of the United States, and that on the basis of her petition and respondent's answer thereto, she is entitled to a peremptory writ of mandamus. Relator then renews the prayer of her petition.

On application of the respondent made with relator present, this court appointed a Master Commissioner to take testimony to be offered by the parties, which he proceeded to do on November 7, 1963. The report of such proceedings was filed in this court on November 14, 1963.

At the inception of the hearing before the Commissioner, the record shows that the relator moved that the peremptory writ of mandamus be granted upon the pleadings which had been filed, that relator objected to the taking of any testimony, claiming that there were no issues of fact under the pleadings, and that the issues made by the pleadings were issues of law, and therefore there was no need for testimony. Both motions were overruled and exceptions taken by relator.

The record further discloses the statement of relator's counsel that he would offer no testimony for the reasons stated above and his statement asking that the court grant the writ as prayed for. Respondent then presented his evidence.

Subsequent to the filing of the Commissioner's report and prior to hearing upon the merits of the case, relator, on November 27, 1963, filed her motion for summary judgment in the following form:

"Now comes the relator and moves this Court for summary judgment granting her a peremptory writ of Mandamus as prayed for in her petition."

The matter is, therefore, before this court upon the pleadings, evidence, motion for summary judgment, the briefs and arguments of counsel.

The facts pertinent to this controversy will be hereinafter set forth. Respondent's answer admits that on the 21st day of September, 1963, relator appeared in the Probate Court of this county and requested to file an affidavit and commence proceedings for the hospitalization of her spouse pursuant to Sections 5122.11 to 5122.15, et seq., Revised Code, which was refused.

It is conceded by respondent that as far as accepting an affidavit, he, as clerk, was required by law to accept same under authority of *State, ex rel. Wanamaker* v. *Miller*, 164 Ohio St., 176, 128 N. E. (2d), 110.

The record discloses that relator and her counsel appeared in Probate Court on July 10, 1962, and requested that "we accept an affidavit to have Mr. Bles picked up and taken to the hospital for examination." The deputy clerk in charge of this branch of probate service took relator's affidavit under oath, which contained several serious charges, among them that she was in fear of her life and that of their three children.

The affidavit (respondent's Exhibit 1) so received in July, 1962, was not officially filed, it was not stamped filed, it was not given a case number, nor was it docketed or indexed. Along with the affidavit the deputy clerk prepared respondent's Exhibit 2, "Case History * * *," respondent's Exhibit 3, "Admission Information" and respondent's Exhibit 4, "Liability For Support," all documents on forms prescribed by the Department of Mental Hygiene and Correction, Division of Mental Hygiene.

The affidavit and the other documents were retained by the deputy clerk as part of the papers under his control.

The affidavit received was not accompanied by a certificate of a licensed physician that he had examined the patient nor a written statement under oath by the applicant that the patient

had refused to submit to an examination by a licensed physician. There is nothing in the record to indicate that the deputy clerk had asked for such document.

In the interview it was disclosed that there had been divorce proceedings between the parties in Summit County which were later dropped. Subsequently, the parties moved to Cuyahoga County, and about one year thereafter divorce proceedings were again instituted and that case is presently pending in Cuyahoga County.

The deputy clerk at the time he received the affidavit was informed that a divorce case was pending and advised the relator that he would want to talk to the spouse and/or his attorneys before he would issue any warrant in the case.

After subsequent contacts with relator's counsel on July 12th, July 18th, and July 26th, the deputy clerk, on July 27, 1962, interviewed the spouse who presented himself with his counsel at his office in Probate Court. On the same day the deputy clerk advised relator's counsel that although he would accept the affidavit, he would not issue a warrant under the prevailing circumstances.

There was no further action taken, nor any contact with Probate Court, from July 27, 1962, until about September 21, 1963, when relator with her counsel returned to the office of the deputy clerk in Probate Court.

Upon cross-examination, the deputy clerk admitted that relator and her counsel requested that he receive the affidavit and proceed under the Code, which he refused to do, having testified that "we already had taken the affidavit."

The Deputy Clerk testified, on the occasion of this visit, that because of the lapse of time (between July, 1962, and September, 1963) he stated that he would refer the matter over to one of the social workers in the Cleveland Psychiatric Institute and to one of the social workers on the Probate staff in the Probate office and that the social worker would contact both parties and bring the matter up to date. He stated further that if there were grounds that had occurred in the meantime which would merit the issuance of a warrant, "we would be glad to go ahead, but I would have to have the investigation made before I proceeded." That was the last contact. Then the writ was filed.

The record discloses the following:

"JUDGE MERRICK: Do you want the record to show that by agreement it may be stipulated that neither you, Mr. Emmett, nor your client, Mrs. Bles, contacted Mrs. Bohacek nor any other member of the Probate staff?

"MR. EMMETT: That is right.

"JUDGE MERRICK: But that thereafter you filed the Writ?

"MR. EMMETT: Just a moment. That is correct, Mrs. Bles did not contact Mrs. Bohacek, and it was stated to Mr. Duffy at the time that she had no intention of doing so because it did not comply with the procedure outlined by the Revised Code, and that the proceeding which we had asked was to file an affidavit and to proceed thereon and under the Revised Code - -

"JUDGE MERRICK: Do not argue your case.

"MR. EMMETT: I am just telling you what we told Mr. Duffy.

"* * *

"MR. EMMETT: Also, let the record show that I also advised Mr. Duffy at that time that unless there was some action taken we intended to bring a mandamus action."

The record discloses that the respondent, testifying in his own behalf, stated as follows:

"Q. Thank you.

"A. Now, I think we can clear you up on rules. You talk about rules of Court in these cases. These are instructions to the staff. They are not formal Court rules, but instructions as to procedure.

"Q. Then you had instructed them in regard to cases which were pending in divorce, is that correct?

"A. The instruction is this, where there is information which shows that the parties are in divorce court or have threatened to go in or have been in and just out, proceed with caution. Never issue process, that is, the warrant, until a full investigation is made to determine whether this is a step attempted by someone to bolster up their divorce case or through downright meanness to get even for some offense that the other spouse they think has committed, and also they are instructed to

determine whether there is any other past history of mental disturbance, in the first place.

"Q. And that is your rule?

"A. Yes. And at the request of the Judges of the Probate Court, inspired by mysedf, this statute permitting us to investigate the case was passed by the legislature and became effective two years ago this month."

The problem before the court revolves entirely upon an interpretation and construction of the statutes providing for judicial hospitalization of mentally ill persons, Sections 5122.11 to 5122.15, Revised Code. It is evident from the foregoing that the concept of the relator as to the meaning of these statutes is poles apart from the concept of the respondent with respect thereto, as gleaned from the record, and particularly from the construction placed thereon by the respondent in the manner in which the instant proceedings were administered.

Relator's position is that upon the filing of an affidavit pursuant to Section 5122.11, Revised Code, the action is to be docketed, assigned a regular case number, indexed, the case set for hearing with notice, with or without a warrant being issued, the patient examined as the Code provides, and an adjudication by the court.

The practice of the respondent has been to accept a proffered affidavit, conduct an investigation, and unless the investigation demonstrates a bona fide case for intervention of the court, the papers filed are retained in the possession of the deputy clerk, without any further proceedings; the matter is not docketed, filed, assigned a case number nor indexed. It is also noted that if the affidavit or complaint involves parties involved in a domestic relations action or consists of what is regarded as a domestic problem, further proceedings are not undertaken. It is respondent's position that the practice followed is based upon the discretion which he contends is vested in him by the statutes in question. An analysis of the respective statutes is in order.

Section 5122.11, Revised Code, provides as follows:

"Proceedings for the hospitalization of an individual, pursuant to Sections 5122.11 to 5122.15, inclusive, Revised Code, shall be commenced by the filing of an affidavit, in the manner and form prescribed by the division of mental hygiene, with the

probate court, either on information or actual knowledge, whichever is determined to be proper by the court, by any person or persons. Any such affidavit may be accompanied, or the probate court may require that such affidavit be accompanied by a certificate of a licensed physician stating that he has examined the individual and is of the opinion that he is mentally ill and should be hospitalized, or a written statement by the applicant, under oath, that the individual has refused to submit to an examination by a licensed physician. Upon receipt of the affidavit the probate court may, where it has reason to believe that the individual named in the affidavit is likely to injure himself or others if allowed to remain at liberty, or needs immediate hospital treatment, order any health or police officer or sheriff to take into custody and transport such individual to a hospital or other place.

"If such hospital or other place is licensed by the division of mental hygiene, such individual may be observed and treated for a reasonable period of time prior to the hearing provided by Section 5122.15, Revised Code."

Section 5122.13, Revised Code, provides for the following:

"Upon receipt of the affidavit required by Section 5122.11, Revised Code, or upon receipt of information that the probate court considers reliable that a person appears to be a mentally ill individual subject to hospitalization, the probate court may order an investigation. At the direction of the probate court, such investigation may be made by the county welfare department or by a competent social worker or other investigator appointed by the probate court. Such investigation shall cover the character, family relationships, past conduct, whether or not the individual named in the affidavit or statement is likely to injure himself or others if allowed to remain at liberty, and other pertinent factors. The person who conducts the investigation shall promptly make a report to the probate court, in writing or orally, in open court or in chambers, as directed by the court. If the social worker or investigator has reason to believe that an individual investigated is a mentally ill person subject to hospitalization, such social worker or investigator may file an affidavit pursuant to Section 5122.11, Revised Code."

Although Section 5122.11, Revised Code, provides that "proceedings * * * shall be commenced by filing an affidavit * * *,"

a comparison with the first paragraph of Section 5122.13, Revised Code, reveals the following:

"Upon receipt of the affidavit * * * or upon receipt of information that the probate court considers reliable that a person appears to be mentally ill subject to hospitalization, the probate court may order an investigation."

It is evident from these two statutes that they contemplate that an action may be brought to the attention of the court by one of two methods, by the filing of an affidavit pursuant to Section 5122.11, Revised Code, or as indicated, by a second method, namely, an information under Section 5122.13, Revised Code. If brought to the attention of the court by either method, the court may order an investigation. It must be conceded that this language vests the court with discretion with respect to whether or not an investigation shall be called for.

Section 5122.13, Revised Code, likewise contains a provision for the filing of an affidavit by the investigator after the investigation is completed under certain conditions set forth in the statute.

In view of these provisions and in the absence of any mandatory provision in either Sections 5122.11 or 5122.13, Revised Code, commanding that upon the filing of an affidavit or information a case be docketed, assigned a number and indexed, we cannot agree with relator's concept that such is required by Section 5122.11, Revised Code. If we attempt to do so we run head on into the face of the investigation provision of Section 5122.13, Revised Code, applicable to both statutes and to both methods, whether by affidavit or information.

It is a general principle that courts should, if reasonably possible, so construe a statute, or section thereof, as to give it effect. The presumption is that the legislature intended that all of its enactments should be given effect and that every word in a statute is designed to have some effect. 50 Ohio Jurisprudence (2d), 203, Statutes, Section 225.

What is the purpose of the investigation provision in Section 5122.13, Revised Code? Was it not designed as a screening process to enable the court to determine whether the matter brought to the attention of the court is in fact a bona fide complaint or one of a groundless nature, motivated by any one of a number of baseless reasons? Is it not logical to con-

clude that if the preliminary screening of these matters indicated that the person charging someone with being mentally ill did so from ulterior motives that this procedure was designed to protect the innocent party from being stigmatized? Is it not also logical to believe that if as the result of the screening process the probate court concluded that there was a bona fide foundation for the claim of mental illness the judge of said court, in conformity with his oath of office, would perform the duty enjoined upon him by the remainder of the statutes dealing with this problem?

It is our view that only when the court, following an investigation, has reason to believe that the patient is actually mentally ill, is it under any obligation to file, docket, assign a number to a case, treat the same as formally before the court, and proceed to an adjudication of the matter.

The record manifests considerable controversy as to the probate court procedure in the event that the complaint or affidavit is filed by one of the spouses while a divorce action is pending, that is, whether or not there exists in probate court a rule that if such is the case an affidavit will not be accepted.

The respondent, as a witness, has made it clear that there is no formal rule of court to that effect. He does point out that his instructions to his staff as to procedure are that under such circumstances the staff is to "proceed with caution, never issue process, that is, the warrant," until a full investigation is made to determine the foundation for the complaint. When asked, "And that is your rule?" he answered, "Yes."

Clearly, there is nothing in the statutes to indicate that the probate court would be justified in refusing to accept an affidavit merely because there is a divorce case pending between the complainant and the alleged mentally ill spouse. Whether the instructions to the staff be construed as a rule or not, it is apparent that the respondent recognizes that in such case an investigation is to be made to determine the good faith of the complainant. If the instructions are fully complied with, and the court reaches the conclusion that the complaint is baseless he would be justified in refusing to proceed with the complaint. On the other hand, it is a matter of common knowledge that on many occasions, even though a divorce action is pending, one or the other of the parties thereto is actually mentally ill.

If such is made to appear as a result of investigation made by the court, it would constitute an abuse of discretion to refuse to proceed to a judicial determination of the cause.

It is recognized that the court operates through its deputies. Whether or not the deputies on the staff understand the full import and scope of the respondent's instructions as to the procedure to be followed is somewhat in doubt as we view the record as to the court's initial contact with the relator and the affidavit filed on that occasion. Under the issues in the case before us, we are not concerned with that phase of the proceeding.

What we have before us is the refusal to accept an affidavit on September 21, 1963, some fourteen months after the initial contact in July, 1962. The court, in the person of the deputy clerk, had in its possession the papers prepared and received in July, 1962, as an undisposed case. The deputy informed the relator and counsel that the matter would be referred to one of the persons authorized by Section 5122.13, Revised Code, for investigation. The record quoted above indicates quite clearly that the relator and her counsel refused to do anything to cooperate with the court in the investigation ordered. Instead, this petition for a writ of mandamus followed. No doubt the refusal was under the mistaken belief that the Code did not spell this out. Whatever the reason, the fact is that the refusal is a matter of record.

There appears to be no doubt in our view that had the relator conformed to the order of the court to cooperate in the investigation and if the proof was of the character that in her opinion warranted the affirmative action of the court to proceed with her complaint and the court had refused the same, the path would have been open for her to test the action of the probate court on the basis that the court had abused its discretion.

Under the circumstances, we conclude and hold that relator has not shown that she has a clear legal right to the issuance of the writ. The objection to the taking of testimony is overruled; the motion for judgment on the pleadings is overruled; the motion for summary judgment is overruled. Writ is de-

Exceptions. Order see journal.

KOVACHY, P. J., and WASSERMAN, J., concur.